Please all rise. Hear ye, hear ye, hear ye. This honorable appellate court for the second petition has been announced back in the session pursuant to adjournment. Now, after you please be seated. Thank you, please be seated. The case on the docket 2-16-0046. Henry American married Stirnichuk, now known as Wagner and Kevin Stirnichuk, respondent and police. Morning, Stirnichuk. As father of the next friend and family, Henry Stirnichuk. Good morning. Intervener, appellate. Morning, counsel. Good morning. Mr. Gibson. Good morning. Good morning, your justices. Mr. Douglas, may it please the court. My name is Scott Gibson. I represent the intervener, minor Emily Stirnichuk, by her family in this case, as you know. Judge, this case provides a very narrow, simple, but extremely important issue for you to decide. It's our position that the trial court err by barring me as the attorney for the intervener from participating in the trial where the division of marital assets in the estate was the issue. As you can see by the court's order, the written order from the trial court, there's a series of rulings and the basis for the order and then the order. You can also see from the record that there was an off-the-record discussion and argument before the court, which was later then memorialized in the record. Mr. Gibson, just to pin down some threshold facts. Yes. You filed the petition to intervene, the trial court allowed it, but I also understand the trial court ruled that you could not actively participate in the proceedings. Correct. Did you then stay in the courtroom to monitor or did you leave? I left. Okay. Which brings me to the next question, which I think is an important question, is what additional evidence are you suggesting you would have presented? Well, Judge, in terms of the actual witnesses that were there, Mary Sternachek was the only witness I really needed. Right. And as you can see from the record of proceedings, I was not there. I was not able to present any other witnesses, argument, cross-examination or evidence. That's true, but you were allowed to remain in the courtroom. You chose to leave. Well, that's what the record said. It was apparent from the trial court that it says in the record you cannot participate. Right. I guess I could have sat there, but there would have been really no purpose. for me to sit there. Did you make an offer of proof? I did not. You did not. There was no basis given by the trial court, either off the record or on the record, why I could not participate. It was obvious from the trial court's demeanor and his tone of voice and everything else that he wasn't going to allow me to do anything. No motion to reconsider made? No. That would have been futile. A lot of these decisions were made, it seems, back in the chambers off the record, correct? Yes, Judge. That's where your discussion took place. Many discussions we had. Well, we had a formal argument off the record. Unfortunately, it was off the record in front of the court, as you normally would do. We never were in chambers, so to speak. And then it was memorialized. The court did not want the court reporter to report it. Then later, you saw what happened, kind of half memorialized it. I apologize. First of all, you argued it was a de novo review, at least in the brief you said. Is that correct? Is it a de novo review based upon not allowing you to present evidence as an intervener? I believe so, yes. It's not up to the court's discretion as to how an intervener is going to proceed in the courtroom? Well, I don't think so. I mean, in this case, and as in the Palak case, there's very little appellate. I'm sure you just have done your own research. There's very little record in this particular case, somewhat of an unusual instance, with an intervener on a divorce case. But in this case, the Palak case, which is a reported decision, the court did it the right way. In that case, the husband and wife were objecting to the intervener participating and objecting to the debt that was owed under D-8. But the court allowed the intervener to participate, cross-examine, and included in the court's final order a proper distribution of the marital estate so that the debt could properly be addressed and satisfied. In this case. Well, that is really not to interrupt, but Justice Burke's point is well taken. Unless there's going to be an automatic right of an intervener to enter the case, there has to be discretion utilized by the trial judge. And if there is, the review would have to be an abuse of discretion. Are you saying that an intervener always has an automatic right to enter the litigation? You're not saying that, are you? No, I'm not. But once the order is that we could intervene, and if the court finds it's an abuse of discretion standard, I would still argue that it's an abuse of discretion in this case. Right. But here's what I think we're wrestling with. On the issue of prejudice, again, if there's no offer of proof, there's nothing cited to us that shows how you were prejudiced by not being able to bring out certain evidence and what that evidence was. Isn't that a problem? Well, the real prejudice is starkly in front of you, right, in the court's ruling and order. Because you couldn't participate. Right. It's so factual. Right. And in the ruling on paragraph 16 of the trial court's ruling, the trial court under D-8 is required to analyze, include evidence as fits appropriate, and include a just division of the marital estate so that any debt can be addressed. In paragraph 16, the trial court actually individualizes all the debts of the parties. And by a glaring omission does not include the summary judgment against Kevin Sternacek. There's no debt yet, though. Well, there's a judgment against him. No amount? No. It could be a dollar. It could be a penny. It could be $40 million. Correct. The court has no idea. So how are you going to allocate that debt if you have absolutely no idea what the debt is? Well, but the case is still pending in the Law Division case. I mean, there's a delicate balance. The reality, the practical reality of the situation is this. You've got a grandfather having sex with his 8-year-old granddaughter. It's horrible. It's videotaped. It's terrible. He pleads guilty, and the Law Division judge, Judge Winter, I think has been very sensitive to this case in the sense that she did not want to force the minor to have to go to trial and participate in pretrial preparation or trial testimony because of, you know, the damage and horror that might do to an 8-, 9-year-old girl. So what she did is, after the summary judgment was entered, and there's other counsel pending, said, you know, counsel, we're not going to have a trial in this case until the divorce case is done and we see what assets are actually available to try to satisfy whatever debt. I think any reasonable person, anybody in the world, would know that the damages owed Emily Sternecheck exceed the marital estate by many, many multiples of times. So there was this – So what's the interplay there? Because inevitably and inexorably we're going to have to look at that probably. I mean, as I understand it, the main asset, or the only substantial asset, was the party's former marital home. Yes. Which the court valued $100,000, and according to petitions honored by testimony, required substantial repairs. So was that something that was shocking, I mean, that the wife got the marital home? Well, there's also almost a $400,000 retirement fund. And what happened with that? That all went to her. It was hers, though. It was hers. Right, but it was marital property, and the court properly found it to be marital property. Keep in mind, Kevin Sternecheck had over a $200,000 retirement fund that he cashed in while he was in prison or jail waiting for the criminal trial, and he paid off the house. So he used his retirement funds for the benefit of Mary. There's no question in this case, Kevin Sternecheck doesn't want his granddaughter to get anything. I mean, that's clear in the report of the proceedings. His counsel didn't do anything. It actually said on the record, Kevin Sternecheck wants all the money to go to Mary. That's irrelevant what he wants. I mean, there's summary judgment pending against him, whether it's been liquidated or not into an amount. The trial court could have deferred, could have used a certain percentage to say there will be a certain percentage of the marital estate that will be held pending the final determination of damages for Emily. I mean, this happens all the time in bankruptcy proceedings. Well, the husband's concerns would be irrelevant to the merits of your client's claim. But, you know, I mean, you're saying that the division, what, was completely out of proportion to what should have been done. Are you saying there was some underlying collusiveness between the attorneys when you talk about, you know, what are you saying exactly? No, I can't. I don't have any proof. I'm not going to say on the record there's any collusion between the attorneys. I'm not going to use that term. I'm just saying that I think Mr. Wysocki, for Kevin Sternecheck, was carrying out his client's wishes, which was to do nothing and get all the money to Mary. But that was up to the court ultimately. That's my point. And the court did say it considered your memorandum of law in which you did ask for an equitable or equal division of the property, correct? Correct. And that's what's so disturbing to us from our point of view is that in the rulings, as I cited in paragraph 16, he does not even cite or include the summary judgment and debt owed or potential debt owed once the damages would be found. And then in his order in paragraphs 11 and 12, in paragraph 11, he cites again all of the debts of Mary. He itemizes them and says that those are going to be her responsibility. He does not even include the summary judgment against Kevin Sternecheck in his order. So I think by the order written by the trial court, it's clear that he did not properly consider his responsibilities under D-8 and that the intervener's rights were not protected in any meaningful way. Can we assume that he did and that one paragraph in the factual findings, he talks about the fact that there was an intervention, and then one of the paragraphs later on in the ruling, he orders that Mr. not do anything. He notes the pending civil case, and he can't dispose of any of the assets because this case is pending. So, I mean, from that order, we can be cognizant of the fact that the court was aware of these proceedings when it allocated the debt. No question it was aware, and we had made that argument that same morning, you know, 15 minutes before the trial started. So I don't think there's any question he was aware. I think that he, the trial court, made a mistake, a major mistake in not allowing me to participate and then being able to make a fair distribution. There was no prejudice to anyone by allowing the intervener to participate. This is a very egregious matter where you've got a child who was horribly sexually assaulted and is very, very damaged. Whatever money may be available, whether it be, you know, it'd be more than what was given to him in this particular order, would be to her benefit for her therapy and counseling. These are very, you know, modest or poor people. But all of that could never be considered by the court because of this unknown reason why he barred us from participating. There's no basis given either on or off the record. He just said no. Well, again, now, you have a hearing in chambers, or I'm sorry, off the record, but it's off the record. And you argue, the other side argues, I don't know if the judge made a ruling or not, but then when I would agree with you, when you come out and on the record, the court basically just says my ruling is you're not participating. Correct. How is that a false situation? Assuming it is not deliverable, assuming it's an abuse of discretion standard, how do we know what the court based its decision on when we don't have a bystander's report of what took place off the record? I can't answer that question because a bystander's report would be absolutely worthless because there was no basis given by the court that a bystander. Again, we don't know that. You argued something in front of the judge as to why you should appear. Yes. The other side argued why you should not participate. Yes. The judge, again, we don't know whether, you're telling me the judge didn't say, the judge just said, you know, I'm going to rule that you're not participating and gave no reason. I mean, I certainly take your word, but we have no record of this, and we certainly have no record of what the arguments were on which the court would have based its opinion. Therefore, how do we know, how can we evaluate abuse of discretion when we have absolutely no basis? What was argued? I don't have a good answer for that, quite honestly. I mean, we can only go with what the record is that we have, and if I made an error in not making a proper, I guess I could have done a bystander report saying there was no basis given, but I thought that it was pretty clear by the judge's order and by the record there that he made it clear that he just wasn't going to let me participate, period. Now, the assets that were involved here, we have this house that's presumably worth $100,000 as is, and then the only other really liquid asset is this savings plan, the AMFI savings plan that was in the wife's name, correct? It's a pension, yeah, pension profit sharing through AMFI, right? But she could take, I mean, that could be distributed with a penalty, but it could be distributed. Well, absolutely without a penalty under the divorce code with a quadro, you could do it without penalties. Well, either way, though, the defined pension plans involved here are really not liquid, correct? Correct. So we're talking about the $100,000 house and about, I think the court found, like $286,000 or something in this AMFI savings plan. I think it's a little more than $300,000, right, or something. So those are really the two assets we're talking about, aren't we? Yes. And is there any indication that was presented to the trial judge here that the wife was knowledgeable of any of the sexual abuse or anything like that? No, Judge, and I took her deposition, which was also attached to my original motion to participate in the trial. She denied that. And we have no evidence, and the state had no evidence contrary to that. The sexual assault was discovered by a family member going into a computer very innocently looking for something else, coming upon the videotape, and then on it went. Do you have any authority to support a position that claims of third parties should be given more weight or priority than the needs of the other spouse? No, I'm not making an argument of more priority. I'm stating that I believe under D-8 and D-11, under the divorce code, that those provisions state that the court shall, amongst all of the other factors, weigh these factors and I think probably weigh them in different ways depending on how the evidence comes. But there is no statutory or court authority that I'm aware of that would give an intervener a higher place in the statutory scheme. And you're assuming the court, excuse me, the follow-up is, you're assuming that the court did not weigh the appropriate factors because the court did not mention in the two places you cited to us in this summary judgment. Correct. Yes, he uses boilerplate language saying that I consider everything presented in front of me, but then his actual order does not appear to even cite or include an analysis of what could be owed to the intervener, excuse me, could be owed through Kevin Cernichek to the intervener. And I'm not stating to this court, I'm not representing that our argument, if we are granted a remand, would be that we get all of, you know, 50% of Kevin Cernichek's assets. I don't think that would be appropriate either. I think there has to be a new trial so that they can determine a proper allocation. Do you have personal knowledge as to how long the marriage was between them? Yes, it was 24 years. Does that weigh into the distribution whether or not the wife should have got substantial assets in a 24-year marriage? I'll represent the court. I'm a personal injury lawyer, not a divorce lawyer. It makes it sort of difficult. But from what I'm told, and actually I was married 25 years of divorce, so I can tell you that the trial courts in Lake County do consider that. There's some informal formulas they use. There's no question she would be entitled to, you know, a substantial amount of the merit of the state. But, again, I think it wasn't fairly distributed based upon our inability to participate. Thank you. All right. You'll have time for rebuttal. Mr. Douglas. Good morning. Good morning. May it please the Court. I want to start, actually, if I can, by answering your question. Because I'm a divorce attorney day in, day out. Significantly agree, yes, the INDMA does provide consideration of the length of the marriage in dealing with matters such as distribution of assets, allocation of debts, and certainly with respect to maintenance now, it explicitly takes into account the length of the marriage in providing for duration. So, in some way, the longer the marriage, the more you'd want the more financially disadvantaged spouse taking care of it. Is that a consideration that enters into our analysis at all? Well, I do believe in this case you do have to consider that. Because what you have is you have a long marriage, and you have Mary, and we're looking at what evidence is in the record, you have Mary testifying that she's relying on credit cards, she can't fix the house, she's already, already in an economically disadvantaged position. Then you have, in addition to that, her put in a situation by her husband's conduct where he's unavailable in any way, unavailable to pay maintenance, unavailable to pay debts. And in addition to the fact that assets were awarded as they were awarded, a substantial amount of debt was put on her plate, because she was the only one available and out of jail to pay them. So, she was interred aside, put in a bad spot, and there was really no way to put her in a good spot. But, I mean, looking toward the future for her, that was her position as a photograph at the time of trial. Which is always a big issue. But looking at her position moving forward, based on the trial court's ruling, I mean, she's getting, she will get her entire defined pension plan. She'll be getting a pension from Abbott. She'll be getting half of his defined pension plan. I got the whole house. And she's getting her entire AbbVie 401k savings program. Even though now she may be living paycheck to paycheck on credit cards, I mean, don't we have to look at what she got in this divorce? The court, this court, can look to make a determination as to whether the distribution was inequitable. Yes. So, the court can look and make a determination whether under Section 503, the property was not distributed in just proportions. In making a determination as to whether or not that is the case, you can take into account the evidence that was presented at trial, and perhaps as you say, it was a snapshot of then, but all trials, all dissolution proceedings are a snapshot of the circumstances as they exist then, pre-distribution of the assets, pre-allocation of the debts. So, in every case, that would be as it is. And in that case, you had a husband who can provide zero to anyone, who has zero need, by the way, to have assets to provide for his needs, because he's in prison. And you have Mary. Yes, it's a snapshot, as all trials are. But you have her circumstances, where she is in need, and there's not great incomes or great assets here at all, and I think you all can see that. And once things are distributed, as they are distributed, to answer one of your other questions, I don't think you can find that the trial judge abuses discretion. I've cited the cases, and you've seen them, and you're aware of them, the law that just because things are divided in equally does not mean that it's not permissible. I mean, just proportions can mean that one person gets more than the other. We're not a property state, so, I mean, there's dozens of cases, reported cases where you don't have to have an equal 50-50 distribution. Exactly. But what about his main point, that it was error for the court to have denied him the right to participate in the proceedings at all? That in and of itself was error. What's your response to that? I don't agree that he was denied his right in all aspects to participate. Firstly, he did participate early on, prior to the trial. Right at the outset, the law division ordered in that tort action, and as he's not a divorce lawyer, I'm not a PI guy, so if I use the long terms in describing what that is, I apologize. That law division case, that there was an order basically enjoining the husband from moving assets around, injunctive relief. That was made part of the family law case right away. So right there, he's participating. You can see from the record, not super clearly, but what you can see to some degree is that the intervener was conducting discovery and was allowed to do that. By the trial judge. Yeah. And you can also see that he sought the intervener continuances and secured them. There were requests, I want to say they're related to maintenance and such, to which the intervener was allowed to file objections. So all along, the intervener was participating. Now, we get to the trial. Trial itself. The trial itself. It was a bifurcated proceeding, so I'm talking about stage two, if you will. So there he is at the trial. Did he not get to participate? No, he did. Because what he was allowed to do is he was allowed to put into evidence the complaint. He was allowed to put into evidence that memorandum, which had his arguments about what he wanted done, which had his arguments regarding how he wanted assets distributed. And it had, I want to say exhibits B3 or something like that attached to it, outlining certain assets. And there was also a summary judgment order in the tort.